UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| CAROLYN FARRAR-JOHNSON | ) | No. 06 B 3089 |
| and RONNIE NELSON, | ) | |
| | ) | |
| Debtors. | ) | Judge Goldgar |

### MEMORANDUM OPINION

This matter is before the court on the motion of Chapter 13 Trustee Glenn Stearns to dismiss the bankruptcy case of debtors Carolyn Farrar-Johnson and Ronnie Nelson. The trustee complains that the debtors have failed to file an amended plan and amended Schedule J, and the resulting unreasonable delay, prejudicial to creditors, requires dismissal of their case under section 1307(c)(1) of the Bankruptcy Code, 11 U.S.C. § 1307(c)(1). The debtors respond that their plan and Schedule J are perfectly acceptable. For the reasons that follow, the motion to dismiss will be denied.[1]

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (L).

### 2. Background

The record discloses no factual disputes necessitating an evidentiary hearing. The

---

[1] The trustee has also moved to dismiss on the ground that the debtors have failed to submit 60 days of prepetition payment advices. See 11 U.S.C. § 521(a)(1)(B)(iv). But the trustee has not pursued that ground in his memoranda and so has abandoned it.

following facts are taken from the debtors' petition, schedules, and plan, as well as from the parties' memoranda.

Debtors Carolyn Farrar-Johnson and Ronnie Nelson are married and live in Great Lakes, Illinois. Farrar-Johnson lists her employer as "DFAS," presumably the Defense Finance and Accounting Service. Nelson lists his employer as "Nexcom," the Navy Exchange Service Command. It is unclear whether the debtors are members of the military or civilian employees, but it is clear that they live in military housing at the Great Lakes Naval Station.

The debtors filed their chapter 13 petition on March 25, 2006, making them subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Their schedules show no mortgage debt. The only secured creditors listed on Schedule D are two automobile lenders. Schedule F, however, discloses $59,053 in unsecured debt, virtually all of it credit card debt.

On their Schedule I, the debtors listed combined gross monthly wages of $5,284 and combined net monthly income (after deductions for taxes and insurance) of $4,176. Consistent with Schedule D, the debtors' Schedule J discloses neither a mortgage payment nor any form of rent. However, the debtors did list on Schedule J $250 for monthly home maintenance expenses and $175 for homeowner's insurance. They also listed as monthly expenses $200 for clothing, $700 for transportation, $150 for recreation, $245 as "pet expense" ($45 of it for "pet insurance"), $500 for food, $100 for cable television, and $46 for a DSL internet connection. Schedules I and J together leave the debtors with $286 in monthly income net of expenses.

Along with their petition and schedules, the debtors completed and filed the required Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, known as "Form B22C." The calculation of their annualized income on the form comes

-3-

to $63,408, putting them over the $53,320 median income for a two-member Illinois household and requiring them to determine their disposable income under 11 U.S.C. § 1325(b)(3). The debtors therefore entered on the form the deductions allowed under 11 U.S.C. § 707(b)(2). Among other things, they claimed a deduction of $1,233 for housing using the IRS Local Standard for a two-member household in Lake County, Illinois. The debtors' total deductions on Form B22C are $4,953, leaving them monthly disposable income of $331.

The debtor's proposed plan addresses only their unsecured debt. The two automobile lenders are to be paid directly through military pay allotment. The debtors propose in their plan to pay their unsecured creditors $17,380 of the $59,053 those creditors are owed, or 29%, over the debtors' five-year "applicable commitment period," 11 U.S.C. §§ 1325(b)(1)(B), (4)(A)(ii).

Trustee Stearns takes umbrage at this proposal. In his view, the debtors' expenses on their Schedule J are overstated and unreasonable – $200 on clothing, $150 on recreation, $245 on pets, and so forth – and the debtors thus are not committing all disposable income to the plan as the Code requires.[2] Even after BAPCPA, the trustee argues, courts not only can but "must" consider Schedule J in determining disposable income. The trustee also complains that the debtors have improperly claimed a housing expense on Form B22C when they have no housing expense. Finally, the trustee argues, "a good faith analysis is still appropriate under BAPCPA." Given the Schedule J and Form B22C, he says, the debtors have not acted in good faith.[3]

---

[2] In addition to the expenses for clothing, recreation, and pets, the trustee questions the debtors' expenses for homeowner's insurance and home maintenance. He also finds the $700 monthly transportation expense excessive since the debtors live on the base where they work – a "short commute," the trustee notes. (Trustee Mem. at 1).

[3] The trustee offers one other ground for dismissal: even accepting the $331 disposable income figure from Form B22C, the debtors are not devoting all disposable income to the plan for the required five-year commitment period because sixty months times $331 is $19,860, not the $17,380 the debtors propose to pay. The trustee, though, raises this argument

-4-

### 3. Discussion

For good or ill, the trustee loses on all counts. When a debtor is above the median income as these debtors are, BAPCPA's new section 1325(b)(3) calculates disposable income without considering the debtor's Schedule J. By reference to section 707(b)(2)(A), section 1325(b)(3) also lets an above-median debtor claim a housing expense on Form B22C even if he has no housing expense. And whether a debtor is above or below the median, the "good faith" requirement in section 1325(a)(3) cannot be used to attack a debtor's calculation of disposable income.

#### a. Schedule J and the Above-Median Debtor

The trustee's objection to the expenses shown on the Schedule J in this case would have been a strong one in the period before BAPCPA's enactment.[4] Under the new section 1325(b)(3), however, Schedule J is not relevant to the determination of disposable income when a debtor's income is above the median.

Before BAPCPA, Schedule J was essential to the disposable income question for every debtor: the analysis was "one-size-fits-all." *In re Renicker*, 342 B.R. 304, 307 (W.D. Mo. 2006). Section 1325(b) said that if the trustee or an unsecured creditor objected to confirmation of the plan, the debtor either had to pay all claims in full or he had to commit to the plan all projected disposable income received in the next three years. 11 U.S.C. §§ 1325(b)(1)(A), (B). "Disposable income" was defined in section 1325(b)(2) to mean income "not reasonably

---

for the first time in his reply. As such, the argument is waived, at least for purposes of the current motion. *See Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 252 n.5 (N.D. Ill. 2000).

[4] A period some courts now wistfully call "the good old days." *See, e.g., In re Guzman*, 345 B.R. 640, 646 (Bankr. E.D. Wis. 2006); *In re Renicker*, 342 B.R. 304, 307 (Bankr. W.D. Mo. 2006).

necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor," 11 U.S.C. § 1325(2)(A), and was generally calculated by subtracting the debtor's expenses on Schedule J from the debtor's income on Schedule I. *In re Alexander*, 344 B.R. 742, 746 (Bankr. E.D.N.C. 2006). The bankruptcy court decided in its discretion whether the expenses on Schedule J were in fact "reasonably necessary." *Id.*

BAPCPA ushered in a new calculation of "disposable income" for some debtors, one designed to make the determination for those debtors "formulaic." *In re Davis*, ___ B.R. __, 2006 WL 2391138, at *3 (Bankr. E.D. Mich. Aug. 21, 2006). Section 1325(b)(2) still subtracts "amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" from a debtor's disposable income, 11 U.S.C. § 1325(b)(2)(A)(i), although "disposable income" is now defined as "current monthly income" (a term itself defined in section 101(10A), 11 U.S.C. § 101(10)(A)). The change of significance here comes in new section 1325(b)(3). Under that section, "amounts reasonably necessary" are determined differently if the debtor's current monthly income exceeds the median income in the debtor's home state. The expenses for such a debtor, section 1325(b)(3) says, "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."[5/] 11 U.S.C. § 1325(b)(3).

Those provisions constitute the "means test," long a "central feature" of bankruptcy reform efforts, Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 231 (2005), and employed in BAPCPA to determine whether granting relief to a chapter 7 debtor would be an abuse of that chapter. Like the calculation under section 1325(b)(2), the calculation under section 707(b)(2) subtracts certain monthly expenses from current monthly income. 11

---

[5/]   For debtors with income below the median, disposable income continues to depend on Schedules I and J. *In re Kibbe*, 342 B.R. 411, 414-15 (Bankr. D. N.H. 2006).

-6-

U.S.C. § 707(b)(2)(A)(i); *see* Wedoff, *supra,* at 240. Under section 707(b)(2)(A), however, the expenses are drawn, not from the debtor's Schedule J, but from certain Internal Revenue Service standards. 11 U.S.C. § 707(b)(2)(A)(ii)(I); *see generally* Wedoff, *supra*, at 252-72.[6/]

When a chapter 13 debtor is above the median income, section 1325(b)(3) accordingly makes clear that Schedule J has no role in calculating disposable income. That section states plainly that disposable income "shall" be determined under section 707(b)(2) using the IRS standards. 11 U.S.C. § 1325(b)(3). Although context may sometimes suggest otherwise, "shall" typically means "must." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995); *see also In re Barr*, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006) (noting that "shall" in section 1325(b)(3) makes the use of the means test "mandatory"). For an above-median debtor, then, expenses *must* be calculated under section 707(b)(2); what the debtor lists as expenses on his Schedule J, outrageous or not, is beside the point. *See Guzman,* 345 B.R. at 642 (holding that "the unambiguous language of the new statute compels but one answer: the above-median debtor's expense deductions are governed by Form B22C, not by Schedule J"); *Alexander,* 344 B.R. at 746; *Barr,* 341 B.R. at 185.

Allowing Schedule J back into the disposable income equation, as the trustee urges, would undo what Congress sought to accomplish in section 1325(b)(3). One of the aims of the means test was to limit judicial involvement – and so judicial discretion – by making mechanical the determination of abuse under section 707(b). *See In re Gress,* 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006). The means test in section 1325(b)(3) is meant to have the same mechanical effect. *See* Henry E. Hildebrand, III, *Unintended Consequences: BAPCPA and the New*

---

[6/]   In chapter 13 cases, debtors now submit a form, Form B22C, on which they calculate currently monthly income and, if current monthly income is above the median, disposable income using these standards. *See* Interim Fed. R. Bankr. P. 1007(b)(6).

-7-

*Disposable Income Test*, Am. Bankr. Inst. J., March 2006, at 14, 54 (noting that BAPCPA discards the old calculation of disposable income in favor of "a strict mathematical model"). Although the trustee finds this new regime distasteful,[7] Congress evidently knew what it was doing. *See Barr*, 341 B.R. at 185 (citing legislative history); *see also* Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 485, 526-28 (2005).

The plain language of a statute is the "most reliable indicator of congressional intent." *Baker v. Runyon*, 114 F.3d 668, 670 (7th Cir. 1997) (internal quotation omitted). When a statute is unambiguous, then, as this one is, the "judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (internal quotation omitted). It is not the courts' place to rewrite the statute, turning it into something they consider more logical, sensible, or conducive to human progress and enlightenment. The sole function of the courts is "to enforce the statute according to its terms."[8] *Guzman*, 345 B.R. at 646.

Because the debtors in this case have income above the median, section 1325(b)(3) calculates their disposable income under section 707(b)(2). The expenses claimed on their

---

[7] Apparently a common reaction among chapter 13 trustees: the "community of chapter 13 trustees" is reportedly "confounded" by the "evisceration of the disposable-income test," especially its effect on unsecured creditors. Hildebrand, *supra*, at *id.*

[8] The trustee offers no interpretation of section 1325(b)(3) that would allow consideration of the expenses in Schedule J. He asserts simply that several courts "have determined that in order to give meaning to the word 'projected' before 'disposable income' in § 1325(b)(1)(B), the court must consider the debtors' Schedules I & J." (Trustee Mem. at 2). Not quite. The decisions the trustee cites – *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006), *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006), and some others – concern the *income* aspect of the calculation. They address whether "projected disposable income" should be determined using the debtor's historical income shown on Form B22C or income shown on Schedule I. *See Hardacre*, 338 B.R. at 722; *Jass*, 340 B.R. at 418. They do not hold that an above-median debtor's *expenses* can be determined using Schedule J despite the clear command to the contrary in section 1325(b)(3). *See Guzman*, 345 B.R. at 644-45 (distinguishing these decisions).

Schedule J, though unreasonable and excessive in many instances, are irrelevant. They supply no basis to dismiss the case.

### b. Form B22C and Applicable Housing Expenses

The debtors' refusal to amend their Form B22C is not a ground for dismissal, either. Under the means test, the debtors are entitled to deduct a housing expense under the IRS standards even though the debtors live in military housing and so have no such expense.

When a debtor has above-median income, section 707(b)(2)(A)(ii)(I) provides that the debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I). On line 24 of Form B22C, an above-median chapter 13 debtor is told to enter the National Standard amount for living expenses such as food, clothing, and the like. On lines 25B through 29, the debtor is told to enter the Local Standard amount for other expenses. Line 25B requires the "IRS Housing and Utility Standard; mortgage/rent expense" for "your county and family size."

The debtors here complied with the instructions in section 707(b)(2)(A)(ii)(I) and Form B22C. The debtors have a two-member household and live in Lake County, Illinois. The IRS Housing and Utility Local Standard for a two-member household in Lake County, Illinois is $1,233. See http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm (then select Illinois).[2] The debtors entered a $1,233 expense as the Local Housing and Utility Standard.

---

[2]  The web site of the Internal Revenue Service states that the Local Standard housing expenses shown are "intended for use in calculating repayment of delinquent taxes" and that expense information for bankruptcy calculations can be found on the web site of the U.S. Trustee program. See http://www.irs.gov/businesses/small/article/0,,id=104696,00.html.

The debtors were entitled to claim that expense whether they had it or not. Section 707(b)(2)(A)(ii)(I) permits a debtor to claim "the applicable monthly expense amount" under the Local Standards. Read in isolation, "applicable" is ambiguous, meaning simply: "That can be applied; appropriate." *American Heritage Dictionary* 89 (3rd ed. 1996); *see also Webster's Third New Int'l Dictionary* 105 (1981) (defining "applicable" as "capable of being applied: having relevance"). An expense could be "appropriate" for a debtor to claim because he actually incurs that expense. It could also be "appropriate" to claim because he lives in a certain state and county and has a household of a certain size, putting him in the right box on the Local Standards chart.

Statutory terms, though, are never read in isolation; they are read in the context in which they appear. *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424, 445 (7th Cir. 2006). Section 707(b)(2)(A)(ii)(I) defines monthly expenses not only as a debtor's "*applicable* monthly expense amounts" under the "National and Local Standards" but also as the debtor's "*actual* monthly expenses" for the categories the IRS specifies as "Other Necessary Expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). Congress drew a distinction in the statute between "applicable" expenses on the one hand and "actual" expenses on the other. "Other Necessary Expenses" must be the debtor's "actual" expenses. Expenses under the "Local Standards," in contrast, need only be those "applicable" to the debtor – because of where he lives and how large his household is. It makes no difference whether he "actually" has them. *See* Wedoff, *supra,* at 256 (noting that "a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less").

Although the clear statutory language ends the inquiry here as well, *see Germain*, 503 U.S. at 254, it is worth noting that the result is consistent with the legislative history. Congress

-10-

recognized that employing the IRS expense standards would be "'rigid and inflexible,'" *Jensen, supra,* at 526 (quoting 145 Cong. Rec. H2718 (daily ed. May 5, 1999) (statement of Rep. Hyde, objecting to the use of IRS standards)), and that those standards would be "'divorced from the debtor's actual circumstances,'" *Barr,* 341 B.R. at 185 (quoting dissenting views from House Judiciary Committee report). Eliminating flexibility was the point: the obligations of chapter 13 debtors would be subject to "clear, defined standards," no longer left "to the whim of a judicial proceeding." *Jensen, supra,* at 527 (quoting 145 Cong. Rec. H2719 (daily ed. May 5, 1999) (statement of Rep. Armey)). If, as one court has remarked, debtors now propose plan payments "based on a sort of parallel universe," *Gress,* 344 B.R. at 922, that was what Congress had in mind.

In support of his argument that the debtors here cannot claim a housing expense, the trustee cites two decisions holding that a debtor cannot claim an expense under the Local Standards that he does not actually incur. *See In re McGuire,* 342 B.R. 608, 613 (W.D. Mo. 2006) (transportation expense); *Hardacre,* 338 B.R. at 728 (same). There are others. *See In re Carlin,* ___ B.R. ___, 2006 WL 2398750, at *2 (Bankr. D. Or. Aug. 18, 2006) (same); *In re Wiggs,* No. 06 B 70203, 2006 WL 2246432, at *2-3 (Bankr. N.D. Ill. Aug. 4, 2006) (same).

The problem with these decisions is twofold. First, some of the decisions interpret the word "applicable" in section 707(b)(2)(A)(ii)(I) to mean "actual." *See Carlin,* 2006 WL at 2398750, at *2; *Wiggs,* 2006 WL 2246432, at *2; *McGuire,* 342 B.R. at 613. In doing so, though, they never consider the presence of the word "actual" later in the same sentence. Second, some of the decisions look for guidance to internal IRS manuals stating that the expenses in question cannot be claimed if a taxpayer has not incurred them. *See McGuire,* 342 B.R. at 612-13; *Hardacre,* 338 B.R. at 728. Section 707(b)(2)(A)(ii)(I), however, deems the

-11-

debtor's expenses to be the "amounts specified" in the Local Standards. 11 U.S.C. § 707(b)(2)(A)(ii)(I). It nowhere incorporates wholesale all IRS criteria for tax collection matters. As *Wiggs* rightly noted, the statute is what matters (and if necessary the legislative history), not internal IRS manuals. *Wiggs,* 2006 WL 2246432, at *2.

Because the debtors properly claimed a $1,233 housing expense on Form B22C, their case cannot be dismissed for refusing to amend the form.

### c. Section 1325(b) and Good Faith

Finally, the debtors' case will not be dismissed because they have proposed a plan in bad faith and refuse to amend it. The trustee is generally correct, of course, when he says that a good faith analysis under section 1325(a)(3) is "still appropriate after BAPCPA." (Trustee Mem. at 2). But he is not correct to claim that inflated expenses on a Schedule J establish bad faith. Nor would he be correct in claiming that the debtors' "improper housing allowance deduction" (Trustee Mem. at 2) established bad faith even if their deduction were improper.

This kind of good faith objection to a debtors' disposable income has had little or no potency since the 1984 amendments to the Code. Before those amendments, "bankruptcy courts, in determining 'good faith,' looked at whether the plan proposed substantial or meaningful repayment to unsecured creditors." *See In re Smith,* 848 F.2d 813, 820 (7th Cir. 1988). The 1984 amendments eliminated that inquiry, however, by adding section 1325(b) and its disposable income test. *Id.; see also* 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 193.1 at 193-1 (3rd ed. 2006). After 1984, a debtor's expenses were either "reasonably necessary" or they were not. If they were, and the plan was otherwise confirmable, it would "be confirmed even if it provide[d] for minimal (or no) payments" to unsecured creditors. *Smith,* 848 F.2d at 820. Good faith no

longer had an economic component. *See* 3 Lundin, *supra,* § 193.1 at 193-2.

If that was true after 1984, it is *a fortiori* true after 2005, at least in the case of debtors with income above the median. For those debtors, as discussed earlier, the determination of disposable income is now meant to be a simple and straightforward matter of arithmetic based on sections 707(b)(2)(A) and (B).[10] Debtors may claim applicable expenses under the IRS National and Local Standards, and may also claim actual Other Necessary Expenses, without any judicial consideration of whether those expenses are in fact "reasonably necessary." *See* 8 Alan N. Resnick & Henry J. Sommer, eds., *Collier on Bankruptcy* ¶ 1325.08[5][c][i] at 1325-65 (15th ed. rev. 2006) (noting that section 1325(b)(3) "permits debtors to deduct amounts allowed by the chapter 7 means test, even if they seem excessive to a trustee or creditor"). If the reasonable necessity of a debtor's expenses is no longer relevant, then plainly the debtor's "good faith" in claiming them cannot be relevant. Disposable income is "determined under section 1325(b) rather than as an element of good faith under section 1325(a)(3)." *Barr,* 341 B.R. at 186; *see also Alexander,* 344 B.R. at 742.

Had the debtors here claimed an improper housing expense on their Form B22C, the trustee's objection would thus have been that the proposed plan failed to comply with section 1325(b), not that the plan was proposed in bad faith. But the debtors claimed no improper expense, and so, the trustee having identified no other problem with the calculation on the form, the resulting disposable income figure must be accepted. Because these debtors have above-median income, moreover, the expenses on their Schedule J are irrelevant. But even if their income had been below the median, opening up their Schedule J to scrutiny, the trustee's

---

[10] Whether the matter is really so simple and straightforward is open to question. *See generally* 5 Lundin, *supra,* at §§ 471.1-490.1 (dissecting the calculation at length).

objection would again have fallen under section 1325(b), not section 1325(a)(3). The disposable income a debtor decides to commit to his plan is not the measure of his good faith in proposing the plan.

Because the trustee has identified no defects in the debtors' disposable income calculation, and because any defects would not show a lack of good faith in any event, the debtors' bankruptcy case will not be dismissed on that ground.

### 4. Conclusion

For the foregoing reasons, the motion of Chapter 13 Trustee Glenn Stearns to dismiss the bankruptcy case of debtors Carolyn Farrar-Johnson and Ronnie Nelson is denied. A separate order will be entered in accordance with this opinion.

Dated: September 15, 2006

_____
A. Benjamin Goldgar
United States Bankruptcy Judge

-14-